UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 19-cv-63125-RS

ANDREA ARROYO,

      Plaintiff,

vs.

NEXUS SERVICES OF VIRGINIA,
INC., a foreign corporation,

      Defendant.

_____/

## SECOND AMENDED COMPLAINT

Plaintiff, ANDREA ARROYO ("Plaintiff"), by and through the undersigned counsel, hereby sues Defendant, NEXUS SERVICES OF VIRGINIA, INC. ("Defendant"), and in support avers as follows:

## GENERAL ALLEGATIONS

1. This is an action by the Plaintiff for damages exceeding $30,000 excluding attorneys' fees or costs for breach of agreement and violations under the Employee Retirement Income Security Act of 1974 ("ERISA").

2. This Court has jurisdiction over Plaintiff's ERISA claims pursuant to 29 U.S.C. § 1003.

3. This Court has supplemental jurisdiction over the breach of agreement claim because they arise from the same case or controversy as Plaintiff's ERISA claims pursuant to 29 U.S.C. § 1003.

4. Plaintiff was at all times relevant to this action, and continues to be, a resident of Wildomar, California. However, Plaintiff traveled frequently to Florida to perform her job duties for Defendant.

1

5.  Venue is proper in the Southern District of Florida because Defendant conducted and continues to conduct business in the Southern District of Florida. Defendant has fifteen (15) different office locations nationwide, including one office in Broward County, Florida. Defendant also advertises this office to the general public on its website and is authorized to do business in Florida.

6.  Additionally, Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c); and because Defendant is subject to personal jurisdiction herein.

7.  Plaintiff has retained the undersigned counsel in order that Plaintiff's rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee.

8.  Declaratory, injunctive, legal and equitable relief sought pursuant to the laws set forth above together with attorneys' fees, costs and damages.

9.  All conditions precedent for the filing of this action before this Court have been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## FACTUAL ALLEGATIONS COMMON TO COUNT I.

10. Plaintiff performed work for Defendant from January 2014 until February 2017. Throughout her employment with Defendant, Plaintiff held three different positions. Plaintiff worked as a Case Manager, a West Coast Regional Manager, and as an Auditor.

11. From on or about January 27, 2014 until on or about March 2015, Plaintiff worked as a Case Manager. Plaintiff worked for Defendant for a year until they made her sign any employment agreement, which was signed around on or about February 2015.

12. Plaintiff's duties as a Case Manager included assisting new and existing clients by serving as a Libre by Nexus Field Ambassador. As a Case Manager, Plaintiff was responsible for

picking up released detainees from detention centers across South Florida.

13.  Plaintiff worked sixty (60) to sixty-five (65) hours per week as a Case Manager and had an express agreement with Defendant where she was paid a base salary plus commissions ("productivity pay").

14. As a Case Manager, Plaintiff submitted an online form in order to request her commissions.

15. During this time, Defendant paid Plaintiff her salary and her productivity pay, in full.

16. Following this, on or about March 2015, Plaintiff was promoted to the position of West Coast Regional Manager and entered into an express agreement with Defendant where she was paid a base salary plus the productivity pay of a Regional Manager, which was higher than that of a regular Case Manager.

17. As a Case Manager, Plaintiff would earn twenty dollars ($20.00 USD) for every program payment. However, as a West Coast Regional Manager, Plaintiff was supposed to earn double productivity pay, forty dollars ($40.00 US) per program payment.

18. As a West Coast Regional Manager, Plaintiff oversaw employees by reviewing regional offices' procedures while also continuing to perform her Case Manager duties.

19. During her time as West Coast Regional Manager, Plaintiff continued working sixty (60) to sixty-five (65) hours per week.

20. On or about March 2016, Plaintiff started asking Defendant, specifically David See ("Mr. See"), Plaintiff's Supervisor, when she was going to be paid her Regional Manager productivity pay, which they had neglected to pay her since she was promoted to this position.

21. Mr. See told Plaintiff she had to "submit a request" for her productivity pay. However, at the time, Defendant did not have a procedure in place for Regional Managers to submit their

productivity pay.

22. It was not until Defendant's Standard Operating Procedures Manual was updated by

    Defendant in June 2016, that Defendant included provisions for how to submit productivity

    pay request forms and when they had to be submitted.

23. It was at this time that Defendant, through a social media website called "group-me," would

    announce instances where employees could achieve double and triple productivity pay.

24. After Plaintiff's complaints went unheard, on or about March 2016, Plaintiff went directly to

    Richard Moore ("Mr. Moore"), CEO and Co-Owner of Defendant, and asked him why she

    was not being paid her productivity pay.

25. In Mr. Moore's office, Plaintiff advised him that she was owed $14,000.00 in productivity

    payments from her time working as West Coast Regional Manager.

26. Mr. Moore told Plaintiff that he could not pay her this amount. However, at no point did Mr.

    Moore deny that Plaintiff was owed these payments, nor that she was owed this amount.

27. Instead, Mr. Moore told Plaintiff that he could only give her $5,000.00. This was a material

    breach of Plaintiff's express agreement with Defendant.

28. As a result of this material breach, Plaintiff is currently owed nine-thousand dollars

    ($9,000.00 USD) in commissions that were earned during her time as West Coast Regional

    Manager.

### **FACTUAL ALLEGATIONS COMMON TO COUNTS II& III**

29. On or about June 2016, as a result of the number of hours that she was working, Plaintiff

    went from West Coast Regional Manager to a new position created for Plaintiff, an Auditor.

30. During this time, on or about late October of 2016, Plaintiff became aware that her

    insurance premium was not being paid by Defendant.

31. From the beginning of her employment with Defendant, two-hundred dollars ($200.00 USD) were deducted per week from Plaintiff's paycheck to pay for her insurance premium and 401(k).

32. Upon notice of Defendant's illegal activity, Plaintiff went to management to complain about her insurance premium not being paid although the money was being deducted from her paycheck each week.

33. The following year on or about January 2017, Plaintiff requested leave for a personal injury that she suffered when she pulled a muscle.

34. During Plaintiff's medical leave, Plaintiff visited her doctor for her injury and was made aware that Defendant had still not been paying her insurance premium. Plaintiff was forced to pay for her doctor visits out of pocket.

35. Because of Defendant's failure to pay Plaintiff's insurance premium, Plaintiff has accumulated thousands of dollars in hospital bills.

36. These hospital bills were sent to collections and as a result have severely damaged Plaintiff's credit.

37. To make matters worse, on or about January 3rd, 2017, Defendant gave Plaintiff a paycheck in the amount of $622.87 that was returned by her bank for insufficient funds in Defendant's account.

38. Defendant gave Plaintiff a check knowing that it had no funds in its account, and thus would not clear, a violation of Florida Statute §832.05.

39. Towards the end of January 2017, Plaintiff continued seeing money being deducted from her paychecks but not being used to pay her insurance premium nor fund her 401(k), she immediately contacted Mr. Moore for the second time. Plaintiff advised Mr. Moore that

Defendant was not paying her health insurance nor for her 401(k).

40. It was after this complaint to management that Plaintiff began to be accused of coercing other employees to resign. Plaintiff was followed on multiple occasions by agents of Defendant and was even recorded by Defendant without her consent in violation of California Penal Code § 632.

41. On or about February 2017, Plaintiff again complained to Defendant regarding their failure to pay for her insurance premiums and the insurance premiums of other employees at the company.

42. It was around this time that Plaintiff was told by Defendant and/or its agents that they were beginning to "question her loyalty to the company."

43. On or about February 25th, 2017, while on approved medical leave, Plaintiff was told to meet representatives of Defendant at a restaurant. Plaintiff met with Erik Schneider ("Mr. Schneider"), Chief Risk Officer of Defendant.

44. At this meeting Plaintiff was terminated for her repeated complaints to management regarding Defendant's failure to pay her productivity pay, her insurance premiums and her 401(k).

45. Defendant's failure to pay out insurance premiums throughout 2016 and 2017 led to the U.S. Department of Labor's Employee Benefits Security Administration opening up an investigation into Defendant's employment practices.

46. In addition to terminating Plaintiff, Defendant further retaliated against Plaintiff by suing her, along with several other former employees, claiming damages up to $700,000.00 for allegedly starting a competitor company with former employees. This case was dismissed with Prejudice.

47. Further, after unlawfully terminating Plaintiff, and after suing her for no reason other than retaliation for engaging in protected activity, Defendant's fought Plaintiff's application for unemployment.

48. Defendant's appealed Plaintiff's unemployment request to the California Unemployment Insurance Appeals Board, claiming that Plaintiff "had been discharged due to misconduct."

49. Plaintiff ultimately won the appeal, and in the Judge's ruling he supplemented the Administrative Law Judge's findings of fact by adding the following:

> "The claimant was discharged while she was on medical leave because she declined to provide the employer with information that the claimant had privately obtained concerning the employer's failure to fund the claimant's medical insurance benefits, including the name of the attorney assisting the claimant with that matter and the names of former employees who had encountered the same difficulty. The claimant's refusal to provide that information did not violate a duty that the claimant owed the employer. The employer's alleged dissatisfactions concerning the claimant's attendance concerned instances when the claimant was absent due to illness."

50. Any reason proffered by Defendant for the adverse employment action, including allegations of misconduct, is mere pretext for unlawful retaliation.

51. This is substantiated by the California Unemployment Insurance Appeals Board's finding that Defendant "failed to sustain its burden of proving that the claimant was discharged for misconduct."

## COUNT I
### Breach of Agreement

52.  Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 28 of this complaint as if set out in full herein.

53. Defendant breached its agreement with Plaintiff by failing to pay the amount due to Plaintiff for services provided and performed under their agreement, and by not properly paying

Plaintiff for all hours worked in violation of the laws of the United States and the State of Florida.

54. Specifically, Defendant breached the agreement entered into between Plaintiff and Defendant to pay Plaintiff commissions ("productivity pay") earned throughout her time as West Coast Regional Manager.

55. Any agreement entered into between Plaintiff and Defendant is in the possession of Defendant, including the online portal used for employees to input their commissions earned on a case by case basis, and any employment agreement entered into while Plaintiff worked as a West Coast Regional Manager from March 2015 through June 2016.

56. Plaintiff suffered damages as a result of Defendant's breach of said agreement.

**WHEREFORE**, Plaintiff seeks damages from Defendant for breach of agreement, exclusive of pre-judgment interest, costs, and attorneys' fees and any and all other relief that this Honorable Court deems just and proper.

## COUNT II
### *ERISA Interference*

57. Plaintiff re-adopts each and every general and factual allegation as stated in paragraphs 1 through 9 and 29 through 51 above as if set out in full herein.

58. ERISA § 502(a)(1)(B) provides the causes of action by which participants and beneficiaries can challenge benefit claims and denials. 29 U.S.C. § 1132(a)(1)(B).

59. ERISA § 510 provides that, "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…or for the purpose of

interfering with the attainment of any right to which such participant may become entitled under the plan...."

60. Plaintiff is a participant or beneficiary as defined in 29 U.S.C. § 1002 *et seq*. and is a protected individual under ERISA §510.

61. Plaintiff participated in an employee benefit plan as defined in 29 U.S.C. § 1002 (3) *et seq*... Furthermore, the employee benefits plan(s) was established or maintained by the employer and/or employee organizations engaged in commerce or in any industry affecting commerce.

62. The employee benefit plan in which Plaintiff participated in does not fall within the exceptions provided by 29 U.S.C. §§ 1003 (b) and (c).

63. Defendant subjected Plaintiff to adverse employment action and/or disparate treatment for the purpose of interfering with and/ or depriving Plaintiff's rights and/or benefits under ERISA.

64. Plaintiff suffered damages as a result of Defendant's adverse employment action and/or disparate treatment, to wit the deprivation of Plaintiff's retirement and/or health benefits plan.

65. By the conduct described above, Defendant has engaged in interference and/or discrimination against Plaintiff, to wit Defendant terminated Plaintiff in advance of the vesting of employee benefit plans with the intent to avoid contributing and or paying out the employee benefit plans, specifically Plaintiff's retirement and/or health benefits plan.

66. Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that interference on Plaintiff's employee benefit plan was unlawful but acted in reckless disregard of the law.

67. At all times material hereto, the employees exhibiting adverse actions towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

68. Defendant retained all employees who exhibited adverse actions toward the Plaintiff and did so despite the knowledge of said employees engaging in adverse actions.

69. As a result of Defendant's adverse actions, as alleged herein, Plaintiff has been deprived of rights and is entitled to relief.

70. The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent adverse employment action against the Plaintiff, deprived the Plaintiff of statutory rights under federal law.

71. Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

A. Adjudge and decree that Defendant has violated the ERISA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D. Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

E. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## Count III
### *Retaliation under ERISA*

72. Plaintiff re-adopts each and every factual allegation as stated in paragraphs1 through 9 and 29 through 51 of this complaint as if set out in full herein.

73. At all times material hereto, Defendant failed to comply with ERISA, which provides, in relevant part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act." Section 510 of ERISA, 29 U.S.C. § 1140.

74. At all relevant times aforementioned, including at the time of Plaintiff's termination, Defendant, was aware of Plaintiff's rights as an employee, under ERISA.

75. Defendant's termination of Plaintiff's employment was directly and proximately caused by the Defendant's unjustified retaliation for Plaintiff exercising her rights as a beneficiary.

76. As a direct and proximate result of the Defendant's intentional conduct, Plaintiff suffered serious economic losses, physical injury, as well as mental pain and suffering.

77. Any allegedly justified reason for Plaintiff's termination asserted by Defendant is a mere pretext for the actual reason for termination—Plaintiff's complaints and objections to Defendant's failure to abide by the ERISA laws.

78. The Defendant's actions were malicious and were recklessly indifferent to the Plaintiff's rights pursuant to the ERISA, which protects an employee from retaliation for exercising their rights under an employee benefit plan.

79. The aforementioned actions of Defendant were done wantonly, willfully, maliciously and with reckless disregard of the consequences of such actions.

**WHEREFORE**, Plaintiff respectfully requests that this court order the following:

A. Adjudge and decree that Defendant has violated the ERISA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

B. Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, compensatory damages, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

C. Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

D. Award Plaintiff the costs of this action, together with reasonable attorneys' fees; and

E. Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

*(space left intentionally blank)*

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: June 10th, 2020

Respectfully submitted,

*/s/ Daniel J. Bujan Esq.*

Peter M. Hoogerwoerd, Esq.
Florida Bar No.:188239
pmh@rgpattorneys.com
Daniel J. Bujan, Esq.
Florida Bar No.:1017943
Dbujan@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 416-5000
Facsimile: (305) 416-5005